# EXHIBIT A

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

STATE OF MINNESOTA                           DISTRICT COURT

COUNTY OF HENNEPIN                    FOURTH JUDICIAL DISTRICT

_____

Rohit Shirole,                                       Case Type:  Civil (Other)
                                            Court File No. _____
            Plaintiff,

    vs.                                              **SUMMONS**

Compute   North   Holdings,   Inc.   and
Compute North LLC,

            Defendants.

_____

THIS SUMMONS IS DIRECTED COMPUTE NORTH LLC, 7575 CORPORATE WAY, EDEN PRAIRIE, MN 55344 AND COMPUTE NORTH HOLDINGS, INC., 1209 ORANGE STREET, WILMINGTON, DE, 19801.

    1. **YOU ARE BEING SUED**. The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights.  You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

    2. **YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS**.   You must give or mail to the person who signed this summons **a written response** called an Answer within 21 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at: Chestnut Cambronne PA, 100 Washington Avenue South, Suite 1700, Minneapolis, Minnesota,

55401.

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 21 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint. If you do not want to contest the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case**.

6. **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

CHESTNUT CAMBRONNE PA

Dated: December 17, 2021

By /s/ Emeric J. Dwyer
Emeric J. Dwyer (#0389471)
Jesse D. Berglund (#389079)
100 Washington Avenue S, Suite 1700
Minneapolis, Minnesota 55401
Telephone No. (612) 339-7300
edwyer@chestnutcambronne.com
jberglund@chestnutcambronne.com

*Attorneys for Plaintiff Rohit Shirole*

## ACKNOWLEDGMENT

Plaintiff, through its undersigned attorney, hereby acknowledge that costs, disbursements, and reasonable attorney and witness fees may be awarded pursuant to Minnesota Statutes Section 549.211 to the party against whom the allegations in this pleading are asserted.

Dated: December 17, 2021

*/s/ Emeric J. Dwyer*
Emeric J. Dwyer

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF HENNEPIN                          FOURTH JUDICIAL DISTRICT

---

Rohit Shirole,                                                   Case Type:  Civil (Other)

                                                        Court File No. _____

                    Plaintiff,

        vs.                                                      **COMPLAINT**

Compute North Holdings, Inc. and
Compute North LLC,

                    Defendants.

---

Plaintiff Rohit Shirole ("Shirole") by and for his Complaint against Defendants

Compute North LLC and Compute North Holdings, Inc. (collectively "Defendants"), and

for damages and other legal and equitable relief from the Defendants' violations of law

states and alleges as follows:

### PARTIES AND VENUE

1.      Shirole is an individual who resides in the County of Hennepin, Minnesota.

2.      Shirole is a non-white person of South Asian descent.

3.      Defendant Compute North LLC is a Delaware limited liability company

with a registered office address of 7575 Corporate Way, Eden Prairie, MN 55344.

4.      Defendant Compute North Holdings, Inc. is a Delaware corporation not registered to do business in the State of Minnesota and with a Delaware Secretary of State registered address of 1209 Orange Street, Wilmington, Delaware, 19801.

5.      Venue is proper in this court as the acts alleged here substantially occurred within Hennepin county, and Defendant Compute North LLC has a registered office in Hennepin County.

## FACTS

6.      Defendants are in the business of providing colocation services to digital currency mining companies.

7.      Colocation services means Defendants locate, develop, and provide physical locations for the computer equipment used in maintaining blockchain software for digital currency.

8.      Shirole was originally employed by Defendants as a Vice President of Sales and Corporate Development.

9.      During Shirole's tenure as Vice President of Sales and Corporate Development, Compute North was recognized as Minnesota's fastest growing company.

10.     Shirole was based out of Compute North's offices in Eden Prairie, Minnesota.

11.     Shirole was asked to sign a non-compete agreement as a condition of employment.

2

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

12.     Shirole objected to the terms of the presented non-compete and did not sign it.

13.     Defendants proceeded to employ Shirole without a non-compete agreement.

14.     Shirole's primary duties involved selling colocation services and colocated equipment.

15.     Shirole had regular contact with customers, clients, and partners.

16.     Shirole built a global network of contacts in the colocation and cryptocurrency industries.

17.     In November of 2019, Defendants again asked whether Shirole would sign a non-compete.

18.     Defendants proposed a non-compete agreement form.

19.     Shirole proposed changes to the form, including changing certain restrictive covenants and terms regarding compensation.

20.     Defendants rejected these changes.

21.     Shirole did not agree to non-compete agreement.

22.     Defendants continued to employ Shirole.

23.     As a Vice President of Sales and Corporate development, Shirole was compensated in part based on sales made.

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

24.     On or about March 27, 2021, Defendants changed Shirole's title to that of Vice President and Business Development.

25.     On March 27, 2021, Shirole and Defendants entered into a 2021 Sales Commission Plan (the "Commission Plan").

26.     Pursuant to the Commission Plan, Shirole was compensated by commissions on sales made for colocation services, logistics sales, customer funded capital expenditures and colocated equipment sales.

27.     Shirole performed his job duties well.

28.     Shirole made substantial an ongoing sales, increasing in volume and quality as time went on.

29.     Defendants regularly failed to make timely and full payments of commissions and failed to provide commission statements for four consecutive months.

30.     Shirole made numerous requests for the reasons such commission payments were not made but was not given a reason.

31.     Shirole regularly told Defendants that the commission payments were not properly calculated.

32.     Shirole reported that his commission payments were often inaccurate by amounts of $20,000 to $30,000.

33.     Shirole regularly asked for the commission calculations to be completed in timely fashion.

4

34.    Shirole also regularly raised the issues that Defendants "deprioritized" customers in favor of Defendant's own digital currency mining interests.

35.    Defendants would contract to provide more colocation storage capacity than they had available.

36.    Defendants would then choose either themselves or certain select customers to receive the available colocation storage capacity, while other customers would not receive contracted-for services.

37.    Defendants, however, would prepare financial statements as though such services were being provided and payment would be received for the same.

38.    Shirole raised concerns that this deprioritization practice was creating inaccurate forecasts.

39.    Shirole further raised concerns that underpaid commissions and inaccurate forecasts meant the Defendants were misrepresenting their financial status.

40.    Inaccurate financial status reports would be a violation of securities laws, particularly as Defendants were soliciting investors.

41.    On September 15, 2021, Shirole was told that commission calculations and payments were not a priority for the Defendants.

42.    On October 29, 2021, Shirole raised with Drake Harvey, Defendants' Chief Operating Officer, that his commissions had not been properly calculated or paid.

5

43.     Harvey stated that commissions would be paid in full by November 10, 2021.

44.     On October 30, 2021, in response to the conversation with Shirole, Harvey also stated that Shirole could not attend "outward facing" functions for the Defendants until he had signed a non-compete agreement.

45.     Harvey also stated he wanted to take Shirole off of a sales role and move him to a different position.

46.     These changes made little sense because of Shirole's success at sales and term of the Commission Plan.

47.     Harvey stated Shirole should not travel to a previously scheduled conference to Dubai unless he agreed to a non-compete.

48.     Shirole, however, had been directed to attend the conference by the CEO for the Defendants.

49.     Shirole reported to the CEO and not the COO.

50.     Defendants had advertised that Shirole was going to be present at the conference.

51.     Further, Shirole had made plans for a family vacation in Dubai following the conference.

52.     Shirole had expended substantial personal money for this family vacation.

53.     Shirole noted that he was being treated differently than other similarly situated white employees.

54.     Beginning around September 15, 2021, Shirole noted that Harvey and Kyle Wenzel, the Defendants' CCO, were trying to prevent him from making sales.

55.     Wentzel would promptly and without warning change meetings Shirole was going to participate in so that customers would meet with a white sales representative without Shirole being present.

56.      This caused customer confusion.

57.     Defendants began actively moving customers from Shirole to white sales representatives without justification.

58.     Defendants changed Shirole's job duties and sales position because they wanted white employees making sales.

59.     On November 3, 2021, Harvey sent Shirole a new noncompete form.

60.     The noncompete agreement proposed by Defendants on November 3, 2021 is overly broad, unsupported by any consideration, and contrary to Minnesota law.

61.     The noncompete represented an enormous overreach by the Defendants.

62.     The noncompete represented an unfair and untenable restraint on Shirole's livelihood and trade.

63.     Shirole objected to the terms of the noncompete.

7

64.    Shirole stated that he would agree to a noncompete in line with that discussed in previous years.

65.    Shirole provided a partially executed noncompete in line with the version he had previously provided.

66.    Based on the fact he had provided a partially executed noncompete and had been directed to attend by the Defendants' CEO, Shirole attended the conference.

67.    On November 3, 2021, Shirole attended a conference call with the CEO of the Defendants, Harvey, Wenzel, and representatives of Defendant's customer Marathon Digital Holdings.

68.    On that conference call, Harvey stated that Defendants were "pulling out" of planned location in Pitt County, North Carolina because of challenges surrounding the racial demographics of a site.

69.    Harvey stated that the site location was in an "economically down-trodden" area and the residents were "non-white."

70.    Harvey stated that these factors combined with an "activist individual" made the site less desirable.

71.    Harvey made it apparent that the racial demographics of the neighborhood were not desirable because the residents were primarily non-white.

72.    This statement shocked Shirole.

73.     Use of racial demographics in determining site location is contrary to the espoused values of the Defendants.

74.     Use of racial demographics to select such sites is also generally prohibited by governmental organizations Defendants work with to select such sites.

75.     Later in the day on November 3, 2021, Shirole was told he was going to report to Harvey.

76.     On November 4, 2021, Shirole reported Harvey's comments about racial demographics to Defendant's HR department in an in-person meeting followed by a written account of the incident.

77.     Shirole reported that such comments were inappropriate and improper.

78.     Shirole also reported that he was, as a non-white person, concerned about reporting to someone who expressed such views.

79.     Shirole then attended the conference in Dubai, as previously directed by the Defendant's CEO.

80.     The conference was sponsored by another entity with whom Shirole was a primary point of contact.

81.     During the conference, Shirole interacted with Defendants' CEO and CCO, including updating them on meetings and events he was participating in.

82.     Defendants' CEO and CCO responded positively to Shirole's presence and participation on the conference.

9

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

83.    At no point did Defendants' CEO or CCO tell Shirole he should not be at the conference.

84.    At no point did Defendants' CEO or CCO tell Shirole he should not meet with individuals or otherwise continue his job duties.

85.    On his return, Shirole was placed on suspension.

86.    Defendants did not offer Shirole a reason for his suspension.

87.    Defendants did not pay Shirole his full commissions, as promised.

88.    Instead, Defendants demanded Shirole sign a separation agreement.

89.    Defendants told Shirole that if he did not sign a separation agreement, they would fire him for cause.

90.    Defendants do not have a legitimate basis to fire Shirole for cause.

91.    Defendants claim they have cause to fire Shirole because he would not sign a non-compete agreement.

92.    This does not constitute termination for cause.

93.    Defendants cannot direct Shirole to sign a non-compete as part of his job duties.

94.    Defendants employed Shirole for years without a non-compete.

95.    Defendants further claim they have cause to fire Shirole because he attended the conference in Dubai.

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

96.    Shirole complied with the reasonable directions of the Defendants' CEO in attending the conference.

97.    Defendants' CEO and CCO knew and approved of Shirole's attendance and participation in the conference.

98.    This does not constitute cause for termination.

99.    The purported basis to terminate Shirole for cause is a pretext for Defendants' retaliatory animus.

100.    Defendants sought to terminate Shirole in retaliation for reporting various illegal and improper activities.

101.    Defendants further sought to terminate Shirole in retaliation for engaging in activities protected by law, including demanding payment of his commissions.

102.    Defendants further sought to terminate Shirole to deny him earned commissions.

103.    Defendants' proposed separation agreement included a release of all claims against the Defendants.

104.    Defendants' proposed separation agreement substantially reduced the amount of commissions Defendants were obligated to pay Shirole and extended the time by which they had to pay them.

105.    Defendants otherwise were obligated to pay more money faster under the Commission Plan.

11

106.    Defendants' proposed separation agreement also included payment for stock options and incentives that Defendants would otherwise be obligated to make.

107.    Defendants' proposed separation agreement also contained restrictive covenants which were unenforceable under Minnesota law.

108.    Defendants' proposed separation agreement is unreasonable, unenforceable, and contrary to Minnesota and federal law.

109.    Defendants' proposed separation agreement was an adhesion contract.

110.    Defendants' proposed separation agreement was designed to create a legal fiction to benefit Defendants at Shirole's expense.

111.    Defendants wanted to terminate Shirole for cause because they wanted more beneficial treatment under applicable compensation agreements.

112.    Defendants tried to use the threat of terminating Shirole for cause to coerce him to sign the separation agreement.

113.    Defendants repeatedly demanded Shirole sign the separation agreement in less time than that allowed by law for him to consider it, or they would terminate Shirole for cause.

114.    This constitutes unlawful coercion under Minnesota Statute § 609.27.

115.    Shirole refused to sign the separation agreement.

116.    Shirole instead alerted Defendants to the illegal nature of their acts.

12

117.    In response, Defendants terminated Shirole for cause on or about December 8, 2021.

118.    Defendants have stated to their customers and others that they have terminated Shirole for cause.

119.    Defendants did not offer any basis for what constituted cause for Shirole's termination.

120.    Shirole's reputation among his coworkers, contacts, references, and his community have suffered as a result of Defendants' telling others Shirole was terminated for cause.

121.    Defendants do not have a legitimate basis to terminate Shirole for cause.

122.    Instead, Defendants terminated Shirole in retaliation for reporting illegal conduct and insisting on his legal rights.

123.    Defendants further terminated Shirole to avoid paying him lawful compensation that Defendants otherwise owed Shirole.

124.    Defendants owe Shirole at least $6.8 Million in commissions on sales of over $1.3 Billion pursuant to the Commission Plan.

125.    Shirole has substantial stock options and stock grants in the Defendants which the Defendants are seeking to unlawfully reclaim.

**COUNT I**
**DISCRIMINATION ON BASIS OF RACE**
**MINN. STAT. § 363A.08 and TITLE VII OF THE CIVIL RIGHTS ACTS OF 1964**
**AND 1991 (42 U.S.C. § 2000e, *et seq*.)**

13

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

126.    Shirole realleges and restates all preceding paragraphs of this Complaint.

127.    42 U.S.C. § 2000e-2(a) prohibits an employer from discharging or discriminating against any individual with respect to their compensation, terms, conditions, or privileges of employment because of such individual's race.

128.    Under 42 U.S.C. § 2000e-2(a), it is unlawful employment practice to limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect their status as an employee, because of such individual's race.

129.    Similarly, Minnesota Statute § 363A.08 prohibits discrimination against an employee on the basis of their race.

130.    Defendants however favored white employees.

131.    Defendants would pass up potential employees "because of their look."

132.    This unwritten policy meant that Defendants would often preferentially hire white applicants.

133.    Defendants employ primarily white employees.

134.    Shirole is in a protected class on the basis of his race.

135.    Defendants treated Shirole differently on the basis of his race.

136.    Defendants disciplined Shirole differently for purported infractions than white employees.

137.    Defendants discriminated against Shirole because he is non-white.

14

138.    Defendants presented no legitimate reason for this discrimination.

139.    Defendants stated motivation to terminate Shirole is pretext for discrimination.

140.    As a direct and proximate result of the Defendants' racial discrimination, Shirole has suffered damages in an amount to be proven at trial but in excess of $50,000.

141.    Shirole is entitled to an award of actual damages, compensatory damages in the amount of three times his actual damages, civil penalties, and damages for his mental anguish and suffering.

142.    Shirole is also entitled to an award of punitive damages under 42 U.S. Code § 1981a in the amount of $50,000 and punitive damages under Minn. Stat. § 363A.33 in the amount of $25,000.

143.    Shirole is also entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 2000e, et seq. and Minn. Stat.§ 363A.33.

## COUNT II
### REPRISAL/RETALIATION PROHIBITED BY
### MINN. STAT. § 363A.15 and 42 U.S.C.A. § 2000e-3

144.    Shirole realleges and restates all preceding paragraphs of this Complaint.

145.    Shirole engaged in protected activities by reporting racially charged remarks by Harvey.

146.    Defendants, and Harvey in particular, retaliated against Shirole by taking materially adverse employment action, namely suspending him, attempting to

15

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

STATE OF MINNESOTA                                   DISTRICT COURT

COUNTY OF HENNEPIN                          FOURTH JUDICIAL DISTRICT

---

Rohit Shirole,                                              Case Type:  Civil (Other)
                                                    Court File No. _____
                  Plaintiff,

          vs.                                              **COMPLAINT**

Compute North Holdings, Inc. and
Compute North LLC,

                  Defendants.

---

Plaintiff Rohit Shirole ("Shirole") by and for his Complaint against Defendants

Compute North LLC and Compute North Holdings, Inc. (collectively "Defendants"), and

for damages and other legal and equitable relief from the Defendants' violations of law

states and alleges as follows:

### PARTIES AND VENUE

1.       Shirole is an individual who resides in the County of Hennepin, Minnesota.

2.       Shirole is a non-white person of South Asian descent.

3.       Defendant Compute North LLC is a Delaware limited liability company

with a registered office address of 7575 Corporate Way, Eden Prairie, MN 55344.

1

4.      Defendant Compute North Holdings, Inc. is a Delaware corporation not registered to do business in the State of Minnesota and with a Delaware Secretary of State registered address of 1209 Orange Street, Wilmington, Delaware, 19801.

5.      Venue is proper in this court as the acts alleged here substantially occurred within Hennepin county, and Defendant Compute North LLC has a registered office in Hennepin County.

## FACTS

6.      Defendants are in the business of providing colocation services to digital currency mining companies.

7.      Colocation services means Defendants locate, develop, and provide physical locations for the computer equipment used in maintaining blockchain software for digital currency.

8.      Shirole was originally employed by Defendants as a Vice President of Sales and Corporate Development.

9.      During Shirole's tenure as Vice President of Sales and Corporate Development, Compute North was recognized as Minnesota's fastest growing company.

10.     Shirole was based out of Compute North's offices in Eden Prairie, Minnesota.

11.     Shirole was asked to sign a non-compete agreement as a condition of employment.

2

12.    Shirole objected to the terms of the presented non-compete and did not sign it.

13.    Defendants proceeded to employ Shirole without a non-compete agreement.

14.    Shirole's primary duties involved selling colocation services and colocated equipment.

15.    Shirole had regular contact with customers, clients, and partners.

16.    Shirole built a global network of contacts in the colocation and cryptocurrency industries.

17.    In November of 2019, Defendants again asked whether Shirole would sign a non-compete.

18.    Defendants proposed a non-compete agreement form.

19.    Shirole proposed changes to the form, including changing certain restrictive covenants and terms regarding compensation.

20.    Defendants rejected these changes.

21.    Shirole did not agree to non-compete agreement.

22.    Defendants continued to employ Shirole.

23.    As a Vice President of Sales and Corporate development, Shirole was compensated in part based on sales made.

24.     On or about March 27, 2021, Defendants changed Shirole's title to that of Vice President and Business Development.

25.     On March 27, 2021, Shirole and Defendants entered into a 2021 Sales Commission Plan (the "Commission Plan").

26.     Pursuant to the Commission Plan, Shirole was compensated by commissions on sales made for colocation services, logistics sales, customer funded capital expenditures and colocated equipment sales.

27.     Shirole performed his job duties well.

28.     Shirole made substantial an ongoing sales, increasing in volume and quality as time went on.

29.     Defendants regularly failed to make timely and full payments of commissions and failed to provide commission statement for four consecutive months.

30.     Shirole made numerous requests for the reasons such commission payments were not made but was not given a reason.

31.     Shirole regularly told Defendants that the commission payments were not properly calculated.

32.     Shirole reported that his commission payments were often inaccurate by amounts of $20,000 to $30,000.

33.     Shirole regularly asked for the commission calculations to be completed in timely fashion.

4

34.     Shirole also regularly raised the issues that Defendants "deprioritized" customers in favor of Defendant's own digital currency mining interests.

35.     Defendants would contract to provide more colocation storage capacity than they had available.

36.     Defendants would then choose either themselves or certain select customers to receive the available colocation storage capacity, while other customers would not receive contracted-for services.

37.     Defendants, however, would prepare financial statements as though such services were being provided and payment would be received for the same.

38.     Shirole raised concerns that this deprioritization practice was creating inaccurate forecasts.

39.     Shirole further raised concerns that underpaid commissions and inaccurate forecasts meant the Defendants were misrepresenting their financial status.

40.     Inaccurate financial status reports would be a violation of securities laws, particularly as Defendants were soliciting investors.

41.     On September 15, 2021, Shirole was told that commission calculations and payments were not a priority for the Defendants.

42.     On October 29, 2021, Shirole raised with Drake Harvey, Defendants' Chief Operating Officer, that his commissions had not been properly calculated or paid.

5

43.     Harvey stated that commissions would be paid in full by November 10, 2021.

44.     On October 30, 2021, in response to the conversation with Shirole, Harvey also stated that Shirole could not attend "outward facing" functions for the Defendants until he had signed a non-compete agreement.

45.     Harvey also stated he wanted to take Shirole off of a sales role and move him to a different position.

46.     These changes made little sense because of Shirole's success at sales and term of the Commission Plan.

47.     Harvey stated Shirole should not travel to a previously scheduled conference to Dubai unless he agreed to a non-compete.

48.     Shirole, however, had been directed to attend the conference by the CEO for the Defendants.

49.     Shirole reported to the CEO and not the COO.

50.     Defendants had advertised that Shirole was going to be present at the conference.

51.     Further, Shirole had made plans for a family vacation in Dubai following the conference.

52.     Shirole had expended substantial personal money for this family vacation.

27-CV-22-2274

CASE 0:23-cv-02169-JRT-SGE    Doc. 1-1    Filed 07/19/23    Page 26 of 41    Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

53.    Shirole noted that he was being treated differently than other similarly situated white employees.

54.    Beginning around September 15, 2021, Shirole noted that Harvey and Kyle Wenzel, the Defendants' CCO, were trying to prevent him from making sales.

55.    Wentzel would promptly and without warning change meetings Shirole was going to participate in so that customers would meet with a white sales representative without Shirole being present.

56.    This caused customer confusion.

57.    Defendants began actively moving customers from Shirole to white sales representatives without justification.

58.    Defendants changed Shirole's job duties and sales position because they wanted white employees making sales.

59.    On November 3, 2021, Harvey sent Shirole a new noncompete form.

60.    The noncompete agreement proposed by Defendants on November 3, 2021 is overly broad, unsupported by any consideration, and contrary to Minnesota law.

61.    The noncompete represented an enormous overreach by the Defendants.

62.    The noncompete represented an unfair and untenable restraint on Shirole's livelihood and trade.

63.    Shirole objected to the terms of the noncompete.

64. Shirole stated that he would agree to a noncompete in line with that discussed in previous years.

65. Shirole provided a partially executed noncompete in line with the version he had previously provided.

66. Based on the fact he had provided a partially executed noncompete and had been directed to attend by the Defendants' CEO, Shirole attended the conference.

67. On November 3, 2021, Shirole attended a conference call with the CEO of the Defendants, Harvey, Wenzel, and representatives of Defendant's customer Marathon Digital Holdings.

68. On that conference call, Harvey stated that Defendants were "pulling out" of planned location in Pitt County, North Carolina because of challenges surrounding the racial demographics of a site.

69. Harvey stated that the site location was in an "economically down-trodden" area and the residents were "non-white."

70. Harvey stated that these factors combined with an "activist individual" made the site less desirable.

71. Harvey made it apparent that the racial demographics of the neighborhood were not desirable because the residents were primarily non-white.

72. This statement shocked Shirole.

73.     Use of racial demographics in determining site location is contrary to the espoused values of the Defendants.

74.     Use of racial demographics to select such sites is also generally prohibited by governmental organizations Defendants work with to select such sites.

75.     Later in the day on November 3, 2021, Shirole was told he was going to report to Harvey.

76.     On November 4, 2021, Shirole reported Harvey's comments about racial demographics to Defendant's HR department in an in-person meeting followed by a written account of the incident.

77.     Shirole reported that such comments were inappropriate and improper.

78.     Shirole also reported that he was, as a non-white person, concerned about reporting to someone who expressed such views.

79.     Shirole then attended the conference in Dubai, as previously directed by the Defendant's CEO.

80.     The conference was sponsored by another entity with whom Shirole was a primary point of contact.

81.     During the conference, Shirole interacted with Defendants' CEO and CCO, including updating them on meetings and events he was participating in.

82.     Defendants' CEO and CCO responded positively to Shirole's presence and participation on the conference.

9

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

83.    At no point did Defendants' CEO or CCO tell Shirole he should not be at the conference.

84.    At no point did Defendants' CEO or CCO tell Shirole he should not meet with individuals or otherwise continue his job duties.

85.    On his return, Shirole was placed on suspension.

86.    Defendants did not offer Shirole a reason for his suspension.

87.    Defendants did not pay Shirole his full commissions, as promised.

88.    Instead, Defendants demanded Shirole sign a separation agreement.

89.    Defendants told Shirole that if he did not sign a separation agreement, they would fire him for cause.

90.    Defendants do not have a legitimate basis to fire Shirole for cause.

91.    Defendants claim they have cause to fire Shirole because he would not sign a non-compete agreement.

92.    This does not constitute termination for cause.

93.    Defendants cannot direct Shirole to sign a non-compete as part of his job duties.

94.    Defendants employed Shirole for years without a non-compete.

95.    Defendants further claim they have cause to fire Shirole because he attended the conference in Dubai.

96.    Shirole complied with the reasonable directions of the Defendants' CEO in attending the conference.

97.    Defendants' CEO and CCO knew and approved of Shirole's attendance and participation in the conference.

98.    This does not constitute cause for termination.

99.    The purported basis to terminate Shirole for cause is a pretext for Defendants' retaliatory animus.

100.    Defendants sought to terminate Shirole in retaliation for reporting various illegal and improper activities.

101.    Defendants further sought to terminate Shirole in retaliation for engaging in activities protected by law, including demanding payment of his commissions.

102.    Defendants further sought to terminate Shirole to deny him earned commissions.

103.    Defendants' proposed separation agreement included a release of all claims against the Defendants.

104.    Defendants' proposed separation agreement substantially reduced the amount of commissions Defendants were obligated to pay Shirole and extended the time by which they had to pay them.

105.    Defendants otherwise were obligated to pay more money faster under the Commission Plan.

106.    Defendants' proposed separation agreement also included payment for stock options and incentives that Defendants would otherwise be obligated to make.

107.    Defendants' proposed separation agreement also contained restrictive covenants which were unenforceable under Minnesota law.

108.    Defendants' proposed separation agreement is unreasonable, unenforceable, and contrary to Minnesota and federal law.

109.    Defendants' proposed separation agreement was an adhesion contract.

110.    Defendants' proposed separation agreement was designed to create a legal fiction to benefit Defendants at Shirole's expense.

111.    Defendants wanted to terminate Shirole for cause because they wanted more beneficial treatment under applicable compensation agreements.

112.    Defendants tried to use the threat of terminating Shirole for cause to coerce him to sign the separation agreement.

113.    Defendants repeatedly demanded Shirole sign the separation agreement in less time than that allowed by law for him to consider it, or they would terminate Shirole for cause.

114.    This constitutes unlawful coercion under Minnesota Statute § 609.27.

115.    Shirole refused to sign the separation agreement.

116.    Shirole instead alerted Defendants to the illegal nature of their acts.

117.    In response, Defendants terminated Shirole for cause on or about December 8, 2021.

118.    Defendants have stated to their customers and others that they have terminated Shirole for cause.

119.    Defendants did not offer any basis for what constituted cause for Shirole's termination.

120.    Shirole's reputation among his coworkers, contacts, references, and his community have suffered as a result of Defendants' telling others Shirole was terminated for cause.

121.    Defendants do not have a legitimate basis to terminate Shirole for cause.

122.    Instead, Defendants terminated Shirole in retaliation for reporting illegal conduct and insisting on his legal rights.

123.    Defendants further terminated Shirole to avoid paying him lawful compensation that Defendants otherwise owed Shirole.

124.    Defendants owe Shirole at least $6.8 Million in commissions on sales of over $1.3 Billion pursuant to the Commission Plan.

125.    Shirole has substantial stock options and stock grants in the Defendants which the Defendants are seeking to unlawfully reclaim.

**COUNT I**
**DISCRIMINATION ON BASIS OF RACE**
**MINN. STAT. § 363A.08 and TITLE VII OF THE CIVIL RIGHTS ACTS OF 1964**
**AND 1991 (42 U.S.C. § 2000e,** *et seq.***)**

13

27-CV-22-2274

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

126.    Shirole realleges and restates all preceding paragraphs of this Complaint.

127.    42 U.S.C. § 2000e-2(a) prohibits an employer from discharging or discriminating against any individual with respect to their compensation, terms, conditions, or privileges of employment because of such individual's race.

128.    Under 42 U.S.C. § 2000e-2(a), it is unlawful employment practice to limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect their status as an employee, because of such individual's race.

129.    Similarly, Minnesota Statute § 363A.08 prohibits discrimination against an employee on the basis of their race.

130.    Defendants however favored white employees.

131.    Defendants would pass up potential employees "because of their look."

132.    This unwritten policy meant that Defendants would often preferentially hire white applicants.

133.    Defendants employ primarily white employees.

134.    Shirole is in a protected class on the basis of his race.

135.    Defendants treated Shirole differently on the basis of his race.

136.    Defendants disciplined Shirole differently for purported infractions than white employees.

137.    Defendants discriminated against Shirole because he is non-white.

14

138.    Defendants presented no legitimate reason for this discrimination.

139.    Defendants stated motivation to terminate Shirole is pretext for discrimination.

140.    As a direct and proximate result of the Defendants' racial discrimination, Shirole has suffered damages in an amount to be proven at trial but in excess of $50,000.

141.    Shirole is entitled to an award of actual damages, compensatory damages in the amount of three times his actual damages, civil penalties, and damages for his mental anguish and suffering.

142.    Shirole is also entitled to an award of punitive damages under 42 U.S. Code § 1981a in the amount of $50,000 and punitive damages under Minn. Stat. § 363A.33 in the amount of $25,000.

143.    Shirole is also entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 2000e, et seq. and Minn. Stat.§ 363A.33.

## COUNT II
### REPRISAL/RETALIATION PROHIBITED BY
### MINN. STAT. § 363A.15 and 42 U.S.C.A. § 2000e-3

144.    Shirole realleges and restates all preceding paragraphs of this Complaint.

145.    Shirole engaged in protected activities by reporting racially charged remarks by Harvey.

146.    Defendants, and Harvey in particular, retaliated against Shirole by taking materially adverse employment action, namely suspending him, attempting to

15

unlawfully coerce him into a separation agreement which released claims against the Defendants, and terminating his employment.

147.    Defendant's retaliation is causally connected with Shirole's protected activities, occurring promptly after of Shirole's reports of inappropriate and unlawful behavior.

148.    Defendants' retaliatory actions are prohibited by law.

149.    Defendants' retaliatory actions are contrary to Defendant's own policies.

150.    Shirole has been damaged by Defendants' discrimination in an amount to be proven at trial but in excess of $50,000.

151.    Shirole is entitled to an award of actual damages, compensatory damages in the amount of three times his actual damages, civil penalties, and damages for his mental anguish and suffering.

152.    Shirole is also entitled to an award of punitive damages under 42 U.S. Code § 1981a in the amount of $50,000 and punitive damages under Minn. Stat. § 363A.33 in the amount of $25,000.

153.    Shirole is also entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 2000e, et seq. and Minn. Stat.§ 363A.33.

**COUNT III**
**FAILURE TO PAY WAGES PROMPTLY**
**MINN. STAT. CHAP. 181**

154.    Shirole realleges and restates all preceding paragraphs of this Complaint.

unlawfully coerce him into a separation agreement which released claims against the Defendants, and terminating his employment.

147.    Defendant's retaliation is causally connected with Shirole's protected activities, occurring promptly after of Shirole's reports of inappropriate and unlawful behavior.

148.    Defendants' retaliatory actions are prohibited by law.

149.    Defendants' retaliatory actions are contrary to Defendant's own policies.

150.    Shirole has been damaged by Defendants' discrimination in an amount to be proven at trial but in excess of $50,000.

151.    Shirole is entitled to an award of actual damages, compensatory damages in the amount of three times his actual damages, civil penalties, and damages for his mental anguish and suffering.

152.    Shirole is also entitled to an award of punitive damages under 42 U.S. Code § 1981a in the amount of $50,000 and punitive damages under Minn. Stat. § 363A.33 in the amount of $25,000.

153.    Shirole is also entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 2000e, et seq. and Minn. Stat.§ 363A.33.

## COUNT III
### FAILURE TO PAY WAGES PROMPTLY
### MINN. STAT. CHAP. 181

154.    Shirole realleges and restates all preceding paragraphs of this Complaint.

16

27-CV-22-2274

CASE 0:23-cv-02169-JRT-SGE    Doc. 1-1    Filed 07/19/23    Page 37 of 41    Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

155.    Defendants have an obligation to pay Shirole commissions earned in a prompt and timely fashion, pursuant to Minn. Stat. §§ 181.101, 181.13, and 181.145.

156.    Defendants have failed to timely pay Shirole all commissions earned, even after demand.

157.    Shirole has been damaged by Defendants' failure to timely pay wages in an amount to be proven at trial but in excess of $50,000.

158.    Shirole is also entitled to an award of penalties and attorneys' fees pursuant to Minn. Stat. § 181.171, subd. 3.

## COUNT IV
## WRONGFUL TERMINATION

159.    Shirole realleges and restates all preceding paragraphs of this Complaint.

160.    Defendants have terminated Shirole for an illegal reason, namely for engaging in protected activities.

161.    Defendants did not follow their own policies when terminating Shirole.

162.    Defendants' effective termination of Shirole's employment was wrongful.

163.    Defendants' effective termination of Shirole's employment was illegal.

164.    Shirole has been damaged by Defendants' wrongful termination in an amount to be proven at trial but in excess of $50,000.

165.    Shirole is entitled to an award of actual damages, compensatory damages in the amount of three times his actual damages, civil penalties, and damages for his mental anguish and suffering.

17

166.    Shirole is also entitled to an award of punitive damages under 42 U.S. Code § 1981a in the amount of $50,000 and punitive damages under Minn. Stat. § 363A.33 in the amount of $25,000.

167.    Shirole is also entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 2000e, et seq. and Minn. Stat.§ 363A.33.


## COUNT V
### MINN. STAT. § 181.932
### RETALIATION IN VIOLATION
### OF THE MINNESOTA WHISTLEBLOWER ACT

168.    Shirole realleges and restates all preceding paragraphs of this Complaint.

169.    Shirole engaged in protected activity under Minnesota statutes by reporting unlawful behavior.

170.    Shirole reported that Harvey was making racial comments and statements which were offensive to non-white employees.

171.    Shirole reported that his commissions were not accurately calculated or timely paid.

172.    Shirole reported that the forecasting of Defendants may not be accurate, in violation of statements Defendants were making to investors.

173.    Shirole is entitled to an award of actual damages and civil penalties in an amount to be proven at trial, but in excess of $50,000.

18

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

174.    Shirole is also entitled to an award of attorneys' fees under Minn. Stat. §

181.935.

## COUNT VI
## BREACH OF CONTRACT

175.    Shirole realleges and restates all preceding paragraphs of this Complaint.

176.    Shirole and Defendants were parties to valid contracts, the end result of

bargain for exchange.

177.    Defendants breached those contracts by terminating Shirole for cause,

where no cause existed.

178.    Defendants further breached those contracts by failing to pay Shirole all

commissions and wages owed to him.

179.    Defendants further breached those contracts by failing to provide Shirole

all stock options and stock grants to which he was entitled.

180.    Shirole has been damaged by Defendants' breach of contract in an amount

to be proven at trial but in excess of $50,000.

## COUNT VII
## UNJUST ENRICHMENT

181.    Shirole realleges and restates all preceding paragraphs of this Complaint.

182.    Defendants have been unjustly enriched at Shirole's expense.

183.    Shirole has been damaged by Defendants' unjust enrichment in an

amount to be proven at trial but in excess of $50,000.

19

Filed in District Court
State of Minnesota
2/23/2022 2:53 PM

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Rohit Shirole requests a **JURY TRIAL** on his claims and asks that

judgment be entered as follows:

A. Awarding Shirole actual damages, compensatory damages in the amount of

   three times his actual damages, civil penalties, and damages for his mental

   anguish and suffering.

B. Awarding Shirole punitive damages against Defendants under the 42 U.S.C. §

   1981 and the Minnesota Human Rights Act;

C. Awarding Shirole judgment against Defendants in an amount to be proven at

   trial but in excess of $50,000;

D. Awarding Shirole his costs and disbursements;

E. Awarding Shirole his attorneys' fees; and

F. All other relief that this Court deems just and equitable.

CHESTNUT CAMBRONNE PA

Dated: December 17, 2021

By /s/ Emeric J. Dwyer
Emeric J. Dwyer (#0389471)
Jesse D. Berglund (#389079)
100 Washington Avenue S, Suite 1700
Minneapolis, Minnesota 55401
Telephone No. (612) 339-7300
edwyer@chestnutcambronne.com
jberglund@chestnutcambronne.com

*Attorneys for Plaintiff Rohit Shirole*

## ACKNOWLEDGMENT

Plaintiff, through its undersigned attorney, hereby acknowledge that costs, disbursements, and reasonable attorney and witness fees may be awarded pursuant to Minnesota Statutes Section 549.211 to the party against whom the allegations in this pleading are asserted.

Dated: December 17, 2021

/s/ Emeric J. Dwyer
Emeric J. Dwyer

21